UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| KEVIN W. McNUTT and GLORIA J. McNUTT, | : : : : |
| Plaintiffs, | : Civil Action No.: 3:09-cv-2 (FLW) : |
| v. | : **OPINION** : : |
| ESTATE OF BARRY D. McNUTT and, ANDREA H. KASARSKY, | : : : |
| Defendants. | : : |

**WOLFSON, United States District Judge**,

Presently before the Court are cross-motions for summary judgment filed by pro se plaintiffs, Kevin McNutt and Gloria McNutt, his wife (collectively "Plaintiffs"), and Andrea Kasarsky ("Kasarsky"), the widow of Kevin McNutt's brother, Barry McNutt, and the Estate of Barry McNutt (collectively, "Defendants"). This suit arises out of an alleged oral agreement between Barry and Kevin McNutt. In this paradigmatic case demonstrating the old adage that "no good deed goes unpunished," Plaintiffs argue that summary judgment should be granted against Karsarsky in both her personal capacity and as the executrix of Barry McNutt's estate; plaintiffs seek damages in the amount of $650,000, plus interest, for breach of contract as well as punitive damages. They also seek an undetermined amount to satisfy a mortgage on a piece of land in dispute, Lot 25.03, plus interest. Defendants have filed opposition to Plaintiffs' motion and cross-moved for summary judgment. For the reasons stated below, Defendants' cross-motion for summary judgment is GRANTED and Plaintiffs' motion for summary judgment is DENIED.

I.      **Factual Background.**[1]

Sometime in the 1970's, Kevin McNutt and Gloria McNutt acquired land located in Frenchtown, New Jersey, which had been previously owned by Barry and Kevin McNutt's parents. (G. McNutt Tr. 33-9 to 34-8).   This land is divided into three lots: Lot 25, 25.02, and 25.03 (collectively "Lots").  (Compl. ¶ 1); (Decl. Mathews Ex. B) (adopted as statement under oath by Gloria McNutt at G. McNutt Tr. 13-4 to 10, 20-18 to 22-7, and Kevin McNutt at K McNutt Tr. 17-19 to 23); see also (G. McNutt Tr. 30-22-24, 33-19 to 34-8).  Gloria McNutt has been the record owner of Lot 25 since 1997. (G. McNutt Tr. 32-14 to 16); (K. McNutt Tr. 65-13 to 14).  In 1984, Plaintiffs sold Lot 25.03 to Equity Lenders Corp. in lieu of foreclosure. (Mathews Decl. Ex. F).  Plaintiffs live on Lot 25 (G. McNutt Tr. 10-5 to 6), and Plaintiffs' daughter Holly lives on Lot 25.02.  (Id. at 9-5 to 6).  Barry McNutt moved from Frenchtown to Ann Arbor Michigan in 1969.  (Decl. Heisel ¶1).  Two years later, he moved to Virginia.  (Id.).

Plaintiffs allege that, in exchange for Kevin McNutt having taken responsibility for Barry McNutt's alleged felony theft of electrical service on the Lots in 1984 - while Plainttifs owned all three properties - Kevin McNutt and Barry McNutt entered into an oral "real estate contract" in March of 1987 concerning the Lots (the "1987 Agreement").  (Decl. Mathews Ex. B) (adopted as statement under oath by Gloria McNutt at G. McNutt Tr. 13-4 to 10, 20-18 to 22-7, and Kevin McNutt at K McNutt Tr. 17-19 to 23).  Plaintiffs claim that Barry McNutt and Kevin McNutt entered into the 1987 Agreement at a meeting in the law office of George K. Walton, Esq.; George Walton,[2]

---

[1] Under Local Rule 56.1, "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." D.N.J. Civ. R. 56.1(a).

[2] In his Declaration, George Walton declares that both Kevin and Barry McNutt were clients of his, and that due to his gratitude to Herbert T. Heisel, Esq. for transferring to him his

Kevin McNutt, Gloria McNutt, Barry McNutt, Martha Heisel (Barry McNutt's then-wife),[3] and Herbet J. Heisel, Esq. (Martha Heisel's father, now deceased) were all in attendance at the meeting (the "1987 Meeting"). (K. McNutt Tr. 24-18 to 26-14, 47-20 to 48-15, 114-21 to 115-4); (G. McNutt Tr. 86-14 to 88-17). The parties agree that Kasarsky was not present at the 1987 Meeting.[4] (Decl. Kasarsky ¶ 1); (K. McNutt Tr. 114-21 to 115-4); (G. McNutt Tr. 86-14 to 88-1). According to Plaintiffs, in the 1987 Agreement Barry McNutt agreed to (1) obtain a mortgage on Lot 25.02 (which was, at that time, owned by Barry McNutt), (2) disburse funds from that mortgage to Plaintiffs, (3) underwrite and pay for all costs for "extensive maintenance and repair" of the Lots, and (4) satisfy a mortgage to Equity Lenders Corp. on Lot 25.03. (K. McNutt Tr. 34-5 to14, 111-13 to 114-3); (G. McNutt Tr. 86-14 to 88-17).

On January 17, 1987, three months before the 1987 Agreement, Barry McNutt purchased Lot

---

law practice, he gave both McNutt brothers' matters "preferred treatment." (Decl. Walton ¶ 4). George Walton asserts "with absolute certainty that there was never a six party meeting at . . . [his] office involving the McNutts, the Heisels and [him]self." (Id. ¶ 8). He further states that he has "no recollection of any such meeting and . . . would almost certainly have remembered a meeting like that." (Id. ¶ 8). Finally, he asserts that he reviewed his files and could find nothing to indicate any such meeting occurred. (Id.)

[3] In her Declaration, Martha Heisel declares that she was married to Barry McNutt from May 31, 1969 to October 31, 1988, although they separated in "mid-December" of 1986. (Decl. Heisel ¶ 1). She declares that she "can state unequivocally that . . . [she] did not attend any such meeting at Mr. Walton's office or elsewhere." (Id. ¶ 3). She goes on to assert that, as a respected attorney, "[i]t would have been completely out of character for [her father, Herbet T. Heisel, Esq.] . . . to have attended a meeting for the negotiation or formation of a real estate contract which involved his soon-to-be former son-in-law, Barry McNutt and . . . [herself]." (Id. ¶ 4); see also (Id. ¶ 1). She further denies knowledge of a real estate contract between Kevin and Barry McNutt, (Id. ¶ 5), or of Barry McNutt ever mentioning any such contract between Kevin and himself, either oral or written. (Id. ¶ 6). She does, however, state that Barry McNutt had told her of Plaintiffs' money troubles in the late 1980's and that, as a result, he was "help[ing] his brother by purchasing a piece of property from Kevin and Gloria." (Id. ¶ 7).

[4] Barry McNutt and Kasarsky did not start dating until 1988. (Decl. Kasarsky ¶ 2)

3

25.02 from Plaintiffs for $130,000 (Decl. Mathews Ex. C), paying $30,000 in cash and, on March 16, 1987, obtaining a purchase money mortgage from First Fidelity Bank for $100,000. (Decl. Mathews Ex. D). Plaintiffs allege that they paid and satisfied this mortgage in full on April 8, 2002.[5] (G. McNutt Tr. 37-25 to 39-6); (Decl. Mathews Ex. E). On July 20, 1987, Barry McNutt purchased Lot 25.03 from Equity Lenders Corp. for $29,400, paying $14,400 in cash and obtaining a purchase money mortgage for $15,000 from Equity Lenders Corp. (Decl. Mathews Ex. F & G). This mortgage has not been satisfied, but Equity Lenders Corp. has not declared a default (despite payment in full required by August 1, 1992), no foreclosure or other collection proceeding has been commenced, and Equity Lenders Corp. has been out of business since at least 1994. (Decl. Mathews Ex. G & H) (A. Kasarsky Tr. 48-1 to 49-18). Plaintiffs have also produced sixteen checks Barry McNutt sent to Kevin McNutt between June 4, 2001 and November 11, 2003, totaling $21,571 (Ex. 14-17).

Barry McNutt married Kasarsky on May 14, 1995. (A. Kasarsky Tr. 7-7 to 8) (Decl. Kasarsky ¶ 2). Barry McNutt worked on the Lots with Kevin McNutt; Kasarsky accompanied him "infrequently" on these trips. (A. Kasarsky Tr. 28-11 to 13, 30-3). Barry McNutt became ill in 2001. (Decl. Kasarsky ¶ 2). Plaintiffs allege that, in a three-way phone call between Barry McNutt, Kevin McNutt, and Kasarsky in early November 2003, shortly before Barry McNutt's death, Barry McNutt instructed Kasarsky, his wife, to continue funding the 1987 Agreement. (K. McNutt Tr. 61-5 to 63-23; 89-23 to 92-11). Kasarsky denies being a part of this phone call, or that this phone call ever took

---

[5] To evidence their payment of this mortgage, Plaintiffs have produce seven sporadically dated checks made out by Gloria McNutt to Barry McNutt, each for $1,125.00 with no information contained in the memo line. (Ex. 8). Because this Court finds for Defendants on other grounds, it need not consider whether Plaintiffs paid this mortgage in full or even made any payments on the mortgage.

4

place. (Decl. Kasarsky ¶¶ 3-5). Barry McNutt died on November 16, 2003. (A. Kasarsky Tr. 7-9 to 13). Barry McNutt's will bequeathed Lots 25.02 and 25.03, subject to any encumbrances, to Kevin McNutt. (Decl. Mathews Ex. I).

Kasarsky and Plaintiffs remained in contact after Barry McNutt's death. Plaintiffs have produced eight checks Kasarsky sent to Kevin McNutt between November 17, 2004 and May 24, 2007, totaling $26,696.99 (Ex. 19-21), and six letters Kasarsky sent to Kevin McNutt with these checks, some of which reference the money she was sending to him. (Ex. 23, 26, 32-35). Kasarsky contends that she sent this money "out of the goodness of [her] heart" to continue to pay the real estate taxes for Kevin McNutt on Lot 25.02 and 25.03 (Decl. Kasarsky ¶ 8), and to try "to help [her] deceased husband's brother get on his feet and revive his pre-existing business." (Id. at ¶ 9). Along with this financial help, Kasarsky encouraged Kevin McNutt over the years to find work and suggested ways that he could obtain income by renting out the Lots. (Ex. 26, 33, 35). As time passed, Kasarsky became "alarmed" that Kevin McNutt had still not rented out any of the Lots, nor had he used his "fleet of trucks," and other equipment she had purchased for him, to find work. (Decl. Kasarsky ¶¶ 10 -12); (Ex. 35). Kasarsky finally refused to send any more money to Plaintiffs after Kevin McNutt filed a construction lien against her in October 2008. (A. Kasarsky Tr. 37-3 to 20); (K. McNutt Tr. 66-19 to 24, 68-8).

**II.     Procedural History.**

Count I of the Complaint alleges that Kevin McNutt and Barry McNutt "participated in a contract agreement for extensive maintenance and repair" of the Lots in March of 1987, pursuant to which Barry McNutt was to supply labor for two weekends each month and purchase materials and machinery. (Compl. Count I, ¶¶ 1-2). It further alleges that Kasarsky, Barry McNutt's widow, now

5

has the responsibility, both personally and as executrix of Barry McNutt's Estate, to pay funds to Kevin McNutt under the 1987 Agreement (Id. ¶ 3), including the payment of taxes and insurance on the Lots, because Barry McNutt "instructed" Kasarsky to do so shortly before he died. (Id. ¶¶ 8, 9). Count I also alleges that Kasarsky did pay for taxes and insurance on the Lots until a "recent date." (Id. ¶ 9). Count II alleges that Kasarsky's refusals to further perform the 1987 Agreement were deliberate, intentional, and malicious and Plaintiffs demand punitive damages. (Compl. Count II, ¶¶ 1, 2). Count III alleges that Barry McNutt is the owner of record of Lot 25.03 (despite it being bequeathed to Kevin McNutt) (Count III, ¶ 1), that there is an unpaid mortgage on that property (Id. ¶ 2), and that Kasarsky is obligated, both personally and as executrix of Barry McNutt's Estate, to satisfy that mortgage. (Id. ¶ 4). Plaintiffs seek damages in "an amount to be calculated to date to satisfy Equity Lenders, the mortgage holder, plus interest." (Id.). Finally, Count IV charges that Kasarsky's actions were deliberate and intentional and Plaintiffs seek punitive damages. (Count IV, ¶¶ 1-2).

Plaintiffs, residents of Frenchtown, New Jersey (G. McNutt Tr. 4-12 to 14); (K. Mcnutt Tr. 4-1 to 3), originally brought suit in the Superior Court of New Jersey, Law Division, Hunterdon County on November 14, 2008. (Ex. 30). Kasarsky, a resident of Arlington, Virginia (A. Kasarsky Tr. 5-1 to 4), filed a Notice of Removal, pursuant to 28 U.S.C. § 1332, on January 2, 2009. (Def. Notice of Removal). Defendants filed an Answer on January 26, 2009. (Def. Ans.). Plaintiffs filed a motion for summary judgment on May 19, 2009. (Pl. Mot. Sum. J.). Defendants cross-moved for summary judgment on May 22, 2009 (Def. Mot. Sum. J.), and filed opposition to Plaintiffs' motion on June 1, 2009. (Def. Reply).

**DISCUSSION**

**III.     Legal Standard.**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Anderson, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 447 U.S. at 255)); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. Where the non-moving party bears the burden of proof at trial, the moving party can discharge its initial burden of production by producing evidence in support of its motion for summary judgment, but it need not do so. See Id. at 323-24. "If . . . the nonmovant will bear the burden of persuasion at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." Chipollini v. Spencer Gifts, 814

7

F.2d 893, 896 (3d Cir. 1987) (citing Celotex, 477 U.S. at 327-28).

Once the moving party satisfies this initial burden, the non-moving party "must set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). Under Anderson, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324; see also Matsushita, 475 U.S. at 586; Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). Pleadings of pro se plaintiffs are to be construed liberally.[6] Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (citing Dluhos v. Strasberg, 321 F.3d 365, 369

---

[6] It is clear, however, that Plaintiffs are not typical, inexperienced pro se Plaintiffs. Kevin McNutt touts that he was "educated by the best law schools in New Jersey" and "by every lawyer that had a fantasy." (K. McNutt Tr. at 71-2 to 7). Kevin McNutt boasts that he has "had so many cases [he] probably tried more cases than" his opposing counsel in this matter, and "[c]ertainly more than the young guys that [he] runs into." (Id. at 105-19 to 21). In fact, Kevin McNutt has had so much legal experience that it is "damn hard to recall when [he's] done much else." (Id. at 105-24 to 106-1); see also (Id. at 4-14 to 25). After the accumulation of these "25 years of experience in what lawyers will do," (Id. at 71-17 to 18), Kevin McNutt asserts that a judge "was convinced that [he] was an experienced litigator," (Id. at 70-2 to 3), that he has been "rid of [lawyers] 25 years ago," and that he has "handled all this stuff [he is] talking about on [his] own." (Id. at 70-17 to 18). With this self-professed legal acumen, Kevin McNutt coached his co-plaintiff during her deposition and provided answers for her (G. McNutt Tr. 17-1 to 3, 18-5, 25-22 to 23, 27-12 to 13, 28-8 to 10, 45-6 to 7), and continually admonished opposing counsel for failing to live up to his own sterling example. (Id. at 21-23 to 22-17, 35-10 to 16, 74-7 to 10, 106-2 to 108-19).

(3d Cir. 2003)).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323; Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).

**IV.   Contract Elements under New Jersey Law.**

A federal court sitting in diversity must apply the substantive law of the forum state, here New Jersey, in deciding questions of the existence and enforcement of contracts. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Clark v. Modern Group, 9 F.3d 321, 326 (3d Cir. 1993). In New Jersey, the basic elements of a contract are offer, acceptance, and consideration. See Contl. Bank of Pa. v. Barclay Riding Acad., Inc., 93 N.J. 153, 170 (1983), cert. denied, Barclay Equestrian Ctr., Inc. v. Contl. Bank of Pa., 464 U.S. 994 (1983); Friedman v. Tappan Dev. Corp., 22 N.J. 523, 531 (1956). A contract "arises from offer and acceptance, and must be sufficiently definite 'that the performance to be rendered by each party can be ascertained with reasonable certainty.'" Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992) (quoting West Caldwell v. Caldwell, 26 N.J. 9, 24-25 (1958)). "This concept requires that the parties agree 'on essential terms and manifest an intention to be bound by those terms.'" Lankford v. Irby, No. 04-2636, 2006 U.S. Dist. LEXIS 70862, *13 (D.N.J. Sept. 29, 2006) (quoting Weichert, 128 N.J. at 435). Further, a "meeting of the minds" is an "essential element to the valid consummation of a contract." DeVries v. The Evening Journal Ass'n, 9 N.J. 117, 119-20 (1952). "New Jersey . . . will enforce an oral . . . agreement provided that

9

it has the basic contract formation elements of offer and acceptance of sufficiently definite essential terms, or in other words, mutual assent to the same terms (a 'meeting of the minds')." LNT Merch. Co. v. Dyson, Inc., No. 08-2883, 2009 U.S. Dist. LEXIS 62308, *6 (D.N.J. July 21, 2009) (citing Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F. Supp. 342, 348-49 (D.N.J. 1996); Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983)).

V.      **Counts I & II.**

Count I of the Complaint alleges that Kevin McNutt and Barry McNutt "participated in a contract agreement for extensive maintenance and repair" of the Lots in March of 1987, under which Barry McNutt was to supply labor for two weekends each month and purchase materials and machinery. (Compl. Count I, ¶¶ 1-2). It further alleges that Kasarsky now has the responsibility, both in her personal capacity and as executrix of Barry McNutt's estate, to pay funds to Kevin McNutt under the 1987 Agreement (Id. ¶ 3), including the payment of taxes and insurance on the Lots, because Barry McNutt "instructed" Kasarsky to do so. (Id. ¶¶ 8, 9). It also alleges that Kasarsky did pay for taxes and insurance on the Lots until a "recent date." (Id. ¶ 9). Count II alleges that this breach of payment was intentional. (Compl. Count II). Plaintiffs have moved for summary judgment on both counts; Defendants have cross-moved for summary judgment on both counts.

A.      **Kasarsky Cannot be Held Liable as the Executrix of Barry McNutt's Estate.**

In New Jersey, Plaintiffs may bring a breach of contract action against the estate of Barry McNutt and its representative, Kasarsky, if Plaintiffs could have brought the same action against Barry McNutt during his lifetime. See In re Estate of Halbig, No. A-3736-06T2, 2008 N.J. Super. Unpub. LEXIS 2447, *7 (App.Div. 2008) (citing Flicker v. Chenitz, 55 N.J. Super. 273, 279-80 (App. Div.), cert. granted, 30 N.J. 152, appeal dismissed, 30 N.J. 566 (1959)). Defendants have

cross-moved for summary judgment, asserting that Plaintiffs have not provided sufficient evidence to carry their burden of proof at trial to establish all the elements of their breach of contract claim by clear and convincing evidence (Def. Br. 13-18) and that the alleged 1987 Agreement is not enforceable against Barry McNutt (1) because it is unenforceable under the statute of frauds,[7] (Id. at 22-25), (2) because of its illegal subject matter and that it is based on illegal, past consideration,[8] (Id. at 25-29), and (3) because of its vagueness.[9] (Id. at 29-32).

### i. Plaintiffs Have Not Provided Sufficient Evidence to Establish the Elements Of Their Breach of Contract Claim by Clear and Convincing Evidence.

For claims, like those of Plaintiffs, that involve a deceased person, New Jersey's "Dead Man's Act" provides, in relevant part, that:

> When . . . 1 party . . . is sued in a representative capacity, any other party who asserts a claim . . . against such . . . representative, supported by oral testimony of a promise, statement or act . . . of the decedent, shall be required to establish the same by clear and convincing proof.

---

[7] Because this Court finds for Defendants on other grounds, it need not resolve whether the 1987 Agreement must be in writing to be enforceable under N.J.S.A. § 25:1-5(d), nor whether the evidence provided by Plaintiffs constitutes partial performance to bring it out of the statute of fraud's requirement that it be in writing. See generally Lahue v. Pio Costa, 263 N.J. Super. 575, 599-600 (App.Div.), cert. denied, 134 N.J. 477 (1993) (discussing the doctrine of partial performance in New Jersey); Deutsch v. Budget Rent-A-Car, 213 N.J. Super. 385, 388 (App.Div. 1986) (same).

[8] Because this Court finds for Defendants on other grounds, it need not resolve whether the 1987 Agreement is supported by valid consideration (i.e., the work Kevin McNutt performed on the Lots when ownership was under Barry McNutt's name, (K. McNutt Tr. 112-15 to 112-18), and Plaintiffs satisfaction of the First Fidelity Mortgage on Lot 25.02 when ownership was under Barry McNutt's name. (G. McNutt Tr. 37-25 to 39-6); (Mathews Decl. Ex. E)).

[9] Because this Court finds for Defendants on other grounds, it need not resolve whether the 1987 Agreement is so vague that "the performance to be rendered by each party" cannot "be ascertained with reasonable certainty" and, as such, is unenforceable under New Jersey law. See Weichert, 128 N.J. at 435 (quoting West Caldwell, 26 N.J. at 24-25).

N.J.S.A. § 2A:81-2. Application of the Dead Man's Act's heightened evidentiary standard does not, however, automatically occur when a claim involves a deceased person; rather this Court is required to apply a more "nuanced approach" in determining whether Plaintiffs' claim must be proven by clear and convincing evidence. Chance v. McCann, 405 N.J. Super. 547, 573 (App. Div. 2009). Specifically:

> [T]he trial judge must analyze the proofs and determine whether . . . [Plaintiff] has presented a prima facie case of breach of . . . [Decedent's] obligations under the . . . agreement, based on documentary evidence and without relying on oral testimony about . . . [Decedent's] statements or acts. If the trial judge concludes that . . . [Plaintiff] has presented a prima facie case, then the jury should only be charged that it must find "clear and convincing" evidence of statements or acts attributed to . . . [Decedent] by the oral testimony of . . . [Plaintiff] or others, but that otherwise the preponderance of the evidence standard is applicable to the cause of action. If the prima facie case itself depends upon oral testimony with respect to statements or acts by . . . [Decedent], then the jury must be charged that the entire cause of action must be proven by clear and convincing evidence.

Id. at 574 (discussing the proper application of New Jersey's "Dead Man's Act").

In the present case, Plaintiffs have not presented a prima facie case for their breach of contract claim "based on documentary evidence and without relying on oral testimony about . . . [Barry McNutt's] statements or acts." Id. A necessary element of Plaintiffs' prima facie breach of contract claim is the existence of an enforceable contract, which, in turn, consists of the basic elements of offer, acceptance, and consideration. See Contl. Bank of Pa., 93 N.J. at 170; DeVries, 9 N.J. at 119-20. This Court, however, can discern no documentary evidence of the 1987 Agreement's offer or acceptance between Barry McNutt and Plaintiffs; all that Plaintiffs provide on those essential elements of their prima facie case are their own self-serving, oral testimony. See (K. McNutt Tr. 24-18 to 26-14); (G. McNutt Tr. 30-3 to 5). Because Plaintiffs' "prima facie case itself

depends upon oral testimony with respect to statements or acts by . . . [Barry McNutt], . . . the entire cause of action must be proven by clear and convincing evidence." Chance, 405 N.J. Super. at 574.

When ruling on motions for summary judgment, this Court must view the "evidence presented through the prism of the substantive evidentiary burden," and decide "whether a jury could reasonably find either that the plaintiff[s have] proved . . . [their] case by the quality and quantity of evidence required by the governing law [here, clear and convincing evidence] or that . . . [they] did not." Anderson, 477 U.S. 242, 254. Although this Court "may not make credibility determinations or engage in any weighing of the evidence," Marino, 358 F.3d at 247, this Court may determine that this evidence is not sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established," nor is it "so clear, direct and weighty and convincing as to enable (the fact finder) to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." State v. Hernandez, 170 N.J. 106, 127 (2001) (quoting In re Boardwalk Regency Corp., 180 N.J. Super. 324, 339 (App. Div. 1981)) (internal quotations omitted).

The oral testimony provided by Plaintiffs of offer and acceptance for the 1987 Agreement is not of the caliber of clear and convincing evidence that would allow a reasonable jury to find in their favor. Plaintiffs provide only their own, self-serving say-so that the 1987 Meeting took place and that the 1987 Agreement was offered and accepted at that time. Plaintiffs' version is not only unsupported by documentary evidence, but contradicted by the oral testimony of the only still-living witnesses that Plaintiffs allege were present. See supra notes 2 & 3. Without clear and convincing evidence of these essential elements of the 1987 Agreement, Plaintiffs cannot meet the evidentiary burden they would bear at trial as to those material facts, and, as such, summary judgment against Plaintiffs is proper. See Celotex, 477 U.S. at 322-23. (There can be "no genuine issue as to any

material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

>    ii.   **The 1987 Agreement, if it Existed, would be Unenforceable Because it is Illegal.**

In New Jersey, "[a]n agreement to do or to induce the doing of an illegal act is unenforceable." Duff v. Trenton Beverage Co., 4 N.J. 595, 607 (N.J. 1950). Even assuming Plaintiffs had met their evidentiary burden to show the elements of the 1987 Agreement by clear and convincing evidence, summary judgment for Defendants would still be proper because the 1987 Agreement, if it existed, would be unenforceable because it is illegal: Plaintiffs assert that Barry McNutt entered into the 1987 Agreement because Kevin McNutt agreed to "take the fall" for Barry McNutt's alleged theft of electrical services. (K. McNutt Tr. 24-24 to 25-16, 38-20 to 39-13, 56-16 to 22); see N.J.S.A. 2C:29-4 ("A person commits a crime if he accepts or agrees to accept any pecuniary benefit in consideration of refraining from reporting to law enforcement authorities the commission or suspected commission of any offense or information relating to an offense or from seeking prosecution of an offense."); see also State v. Jardim, 226 N.J. Super. 497, 501 n. 1 (Law Div. 1988). By doing so, Plaintiffs find themselves in a catch-22: either Barry McNutt agreed to help Plaintiffs out of the goodness of his heart (and was not obligated to do so), or he entered into the 1987 Agreement to cover up for his past crimes (making the 1987 Agreement unenforceable). See Sutter v. Sec. Trust Co., 96 N.J. Eq. 644, 647 (E. & A. 1924) ("It is well established that a contract founded on an illegal consideration cannot be enforced.") (internal quotations and citations omitted); Broad St. Nat'l Bank v. Collier, 112 N.J.L. 41, 45 (Sup. Ct. 1933) (past consideration cannot be legal

consideration). Thus, even if the 1987 Agreement existed, it was illegal and cannot be enforced by this Court.[10] See Dalton, Dalton, Little, Inc. v. Mirandi, 412 F. Supp 1001, 1003 (D.N.J. 1976) ("If the contract is illegal, it is the policy of the law to leave the parties where it finds them, and to deny relief to both sides. The rule is long established.").

### B. Kasarsky Cannot be Held Personally Liable for the 1987 Agreement Because She Received No Consideration.

Plaintiffs have also sued Kasarsky in her personal capacity. Kasarsky points to Plaintiffs' failure to produce any evidence that she (1) entered into any agreement with Plaintiffs, (2) manifested an intention to be bound personally to the 1987 Agreement, or (3) received any consideration related to the 1987 Agreement; and that therefore, she cannot be bound to it in her personal capacity. (Def. Br. 18-21). Both parties agree that Kasarsky was not present at the alleged 1987 Meeting when the 1987 Agreement was allegedly formed. (Decl. Kasarsky ¶ 1); (K. McNutt Tr. 114-21 to 115-4). Barry McNutt was still married to Martha Heisel at the time.[11] Plaintiffs have

---

[10] Although Plaintiffs have failed to plead an unjust enrichment claim, this too would fail. In New Jersey, "[t]o establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (N.J. 1994); see also Whittingham v. Mortg. Elec. Registration Servs., No. 06-3016, 2007 U.S. Dist. LEXIS 33476, *18-19 (D.N.J. May 15, 2007). Plaintiffs cannot show that Barry McNutt (nor Kasarsky nor Barry McNutt's Estate) unjustly retained any benefit without payment. Plaintiffs have produced sixteen checks from Barry McNutt, some of which state that they are birthday gifts in their memo lines, allegedly paid to Kevin McNutt, reimbursing Kevin McNutt for his work and expenses repairing the Lots. (Ex. 14-17). Further, any benefit that Plaintiffs gave to Barry McNutt cannot logically have been retained by Barry McNutt because Barry McNutt bequeathed all of the Lots he owned to Kevin McNutt and, upon his death on Novemeber 16, 2003, title to those Lots devolved to Kevin McNutt. See infra Sec.V.B. As such, any benefit Kevin McNutt gave to Barry McNutt is now clearly in the possession of Kevin McNutt and, consequently, was not retained by Barry McNutt or his estate unjustly.

[11] See supra note 4.

15

produced eight checks Kasarsky paid to Kevin McNutt between November 17, 2004 and May 24, 2007, totaling $26,696.99 (Ex. 19-21) -- some of which indicate in the memo lines that they are for insurance, truck expenses, and Christmas presents – and six letters from Kasarsky to Kevin McNutt. (Ex. 23, 26, 32-35).  Plaintiffs claim that these checks and letters evidence Kasarsky's intent to be bound by the 1987 Agreement.  (Pl. Br. Legal Argument ¶ 3).

Plaintiffs allege that Kasarsky's obligation began when she was instructed by Barry McNutt to continue funding the 1987 Agreement during a three-way phone call in November 2003 between Barry McNutt, Kevin McNutt, and Kasarsky.  (K. McNutt Tr. 61-17 to 63-23; 89-23 to 91-20; 92-22 to 94-3).  "It is well settled that an agreement to modify an existing valid agreement must have consideration to support it."  Warner-Lambert Pharm. Co. v. Sylk, 471 F.2d 1137, 1143 (3d Cir. 1972) (citing Von Alberti v. Bierman, 117 N.J.L. 431, 189 A. 387 (E. & A. 1937); Kruger v. Mark, 135 N.J.Eq. 1, 37 A.2d 100 (Ch. 1944)); but see supra Sec. V.A.ii (discussing that, even if the 1987 Agreement existed, it would be unenforceable (i.e., invalid) due to illegality).   Kasarsky points to the complete absence of evidence of any consideration flowing to her under the 1987 Agreement. This fact alone is enough to deny Plaintiffs' motion for summary judgment.  See Celotex, 477 U.S. at 323-24.

Plaintiffs assert that the consideration Kasarsky received in exchange for her agreeing to continue funding the 1987 Agreement was Kevin McNutt's continued performance of repairs and restoration on the Lots.  (K. McNutt Tr. 92-22 to 94-3).  Kasarsky, however, has never been the owner of any of the Lots.  Gloria McNutt is the owner of record of Lot 25 and has been since 1997 (G. McNutt Tr. 32-14 to 16); as such, any work Plaintiffs performed on this property cannot constitute consideration flowing to Kasarsky.  Barry McNutt, before his death, was the owner of Lots

16

25.02 and 25.03; as such, while any work Plaintiffs performed on these properties might constitute consideration flowing to Barry McNutt, it cannot constitute consideration flowing to Kasarsky. On November 16, 2003, the date of Barry McNutt's death, title to Lots 25.02 and 25.03 devolved to Kevin McNutt because Barry McNutt's will bequeathed Lots 25.02 and 25.03 to Kevin McNutt, subject to any encumbrances. (Decl. Mathews Ex. I); N.J.S.A. § 3B:1-3 ("Upon the death of an individual, his real and personal property devolves to the persons to whom it is devised in his will . . . ."). As such, Kevin McNutt, as of November 16, 2003, is the owner of Lots 25.02 and 25.03, subject to any encumbrances, and any work that Plaintiffs performed restoring and repairing the Lots after that date inured to themselves and could not constitute consideration flowing to Kasarsky. Without the necessary element of consideration to modify the 1987 Agreement and obligate Kasarsky, Warner-Lambert Pharm. Co., 471 F.2d at 1143, the 1987 Agreement is unenforceable against her in her personal capacity and, as such, summary judgment against Plaintiffs is proper.

    **C.**    **Summary Judgment for Counts I & II.**

Because Defendants have shown that Plaintiffs have failed to make a sufficient showing of the essential elements of their case on which they bear the burden of proof, Defendants are entitled to summary judgment on Count I. Celotex, 477 U.S. at 323. Because Count II of the Complaint only alleges that Defendants' actions alleged in Count I were "deliberate, intentional and malicious" (Compl. Count II, ¶¶ 1-2), and thus, is derivative of Count I, Defendants are also entitled to summary judgment on Count II.

**VI.**    **Counts III & IV.**

Count III alleges that Barry McNutt is the owner of record of Lot 25.03, that there is an unpaid mortgage on Lot 25.03 that Karasaky is obligated, both personally and as executrix of Barry

17

McNutt's Estate, to satisfy it, and that she has failed and continues to refuse to satisfy this mortgage. (Compl. Count III, ¶¶ 1-4). Count IV alleges that these actions were deliberate and intentional. (Compl. Count IV, ¶¶ 1-2). Plaintiffs have moved for summary judgment on both counts; Defendants have cross-moved for summary judgment on both counts.

For the reasons stated above, Plaintiffs cannot rely on the alleged 1987 Agreement to compel Kasarsky as executrix of the Estate of Barry McNutt, or in her personal capacity, to fulfill its terms. See supra Sec. V. These Counts ask for the enforcement of a term of the unenforceable 1987 Agreement. Moreover, Kevin McNutt is the owner of Lot 25.03 as a result of Barry McNutt's bequest, and therefore, his underlying premise for liability is without basis. As such, summary judgment for the Defendants is proper for Counts III & IV.

## CONCLUSION

This Court will not countenance Plaintiffs' attempt to use the judicial system to intimidate Kasarsky to pay money that Plaintiffs can not show that she, nor her late husband, were obligated to pay. In this failed endeavor, Plaintiffs have tried to enforce an illegal, one-sided agreement (based on allegedly illegal, past consideration) against Barry McNutt's widow, both personally and as executrix of Barry McNutt's Estate – the proof of which is derived almost entirely from Plaintiffs' own self-serving statements. Once Plaintiffs' claims are stripped of their baseless "facts," the emperor's new clothes are revealed, i.e., Plaintiffs have no viable claim. For the reasons stated above, Defendants' motion for summary judgment is GRANTED on all counts and Plaintiffs' motion for summary judgment is DENIED on all counts. Therefore, Plaintiffs' Complaint is DISMISSED with prejudice.

Date: November 6, 2009

                                              /s/ Freda L. Wolfson
                                      FREDA L. WOLFSON, U.S.D.J.